UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JONEE FONSECA, | No. 2:16-cv-00889-KJM-EFB |
| Plaintiff, | |
| v. | ORDER |
| KAREN SMITH, M.D., in her official capacity as Director of the California Department of Public Health, | |
| Defendant. | |

This matter comes before the court again following the tragic death of young Israel Stinson. Plaintiff is Israel's mother, Jonee Fonseca. Defendant is Karen Smith, M.D., whom plaintiff is suing in her official capacity as Director of the California Department of Health. On August 31, 2016, defendant filed a motion to dismiss plaintiff's second amended complaint. ECF No. 68. Plaintiff opposes. ECF No. 70. On October 7, 2016, the court heard arguments, in which Kevin Snider appeared on behalf of plaintiff and Ashante Norton appeared on behalf of defendant. Oct. 7, 2016 Hr'g Mins., ECF No. 77. For the reasons stated below, defendant's motion to dismiss is GRANTED.

/////

/////

1

I.  JUDICIAL NOTICE

Defendant requests the court take judicial notice of the following documents:

Exhibit A: documents from the Assembly Health Committee Analysis of Senate Bill 2004;

Exhibit B: a copy of the Uniform Determination of Death Act drafted by the National Conference of Commissioners on Uniform State Laws;

Exhibit C: plaintiff's Ex Parte Petition for a Temporary Restraining Order/Injunction and Request for Order of Independent Neurological Exam, filed August 18, 2016, in *Fonseca v. Children's Hospital Los Angeles*, Los Angeles County Superior Court, Case No. BS164387;

Exhibit D: a copy of the Temporary Restraining Order and Order to Show Cause Re Preliminary Injunction filed August 18, 2016, in *Fonseca v. Children's Hospital Los Angeles*, Los Angeles County Superior Court, Case No. BS164387; and

Exhibit E: Order on Ex Parte Application to Dissolve Temporary Restraining Order filed August 25, 2016, in *Fonseca v. Children's Hospital Los Angeles*, Los Angeles County Superior Court, Case No. BS164387.

Def.'s Req. for Judicial Notice ("RJN"), ECF No. 68-2.

Although legislative history is properly a subject of judicial notice, *Anderson v. Holder*, 673 F.3d 1089, 1094 n.1 (9th Cir. 2012), the court declines to take judicial notice of Exhibits A and B because they are not relevant to the court's decision on the pending motion. The court does take judicial notice of Exhibits C through E, as state court filings and orders also are properly subjects of judicial notice, and they are relevant to the court's decision. *See Holder v. Holder*, 305 F.3d 854, 866 (9th Cir. 2002) (taking judicial notice of a state court opinion and briefs filed in that proceeding).[1]

---

[1] The court previously took judicial notice of the state court filings relevant to this case as of May 13, 2016. *See* May 13, 2016 Order at 4 n.2, ECF No. 48 (taking judicial notice of the state court filings attached to ECF No. 14). The court relies on these previously noticed state court filings insofar as they are not duplicative of the exhibits filed with the instant motion.

2

II.     FACTUAL AND PROCEDURAL BACKGROUND

On April 1, 2016, Israel Stinson suffered a severe asthma attack and was taken to Mercy General Hospital, where he was intubated. Second Am. Compl. ("SAC") ¶ 6, ECF No. 64. Israel was eventually transferred to University of California Davis Medical Center in Sacramento ("UC Davis") and admitted to the pediatric intensive care unit. *Id.* On April 10, after performing a series of tests, including a magnetic resonance imaging ("MRI") and computed tomography ("CT") scan, doctors at UC Davis concluded Israel had suffered brain death. *Id.* ¶ 19.

The next day, on April 11, Israel was transferred to Kaiser Permanente Roseville Medical Center – Women and Children's Center ("Kaiser"). *Id.* ¶ 20. On April 14, doctors performed further tests that confirmed Israel had suffered brain death. *See id.* ¶¶ 20–23. That day a doctor at Kaiser, Dr. Myette, filled out and signed a Certificate of Death that declared Israel deceased, *id.* ¶ 36, and Kaiser sought to remove him from life support, *id.* ¶ 40. Also on that day, the Placer County Superior Court granted plaintiff's application for a temporary restraining order requiring Kaiser to maintain life support. *Id.* ¶¶ 40–41. After the Superior Court found on April 27, 2016 that Kaiser had satisfied all medical protocols in determining Israel's death, plaintiff filed this action in federal court. *Id.* ¶¶ 41–42; Ex. G, April 27, 2016 Hr'g Mins., ECF No. 14-8.

On April 28, plaintiff's original complaint in this case named Kaiser and Dr. Myette, alleging violation of, *inter alia*, plaintiff's right to privacy as guaranteed by the Fourteenth Amendment. ECF No. 1. On May 2, the court heard arguments and granted plaintiff's request for a temporary restraining order requiring Kaiser to maintain life support. ECF No. 22.

On May 3, plaintiff filed an amended complaint in which she added as a defendant Karen Smith, M.D., in her official capacity as Director of the California Department of Public Health, alleging, *inter alia*, defendants violated plaintiff's right to due process as guaranteed by the Fifth and Fourteenth Amendments. First Am. Compl. ("FAC"), ECF No. 29. Plaintiff also sought a declaration that the California Uniform Determination of Death Act ("CUDDA"), a statute that defines death in California, is unconstitutional on its face. FAC Prayer ¶ 3.

3

1            On May 6, plaintiff filed a motion for a preliminary injunction against Kaiser, seeking to enjoin Kaiser from removing Israel from life support pending trial.  ECF No. 33.  On May 13, the court issued an order denying plaintiff's motion for a preliminary injunction; however, the court allowed the temporary restraining order to remain in place until May 20 to give plaintiff time to appeal.  ECF No. 48.

            On May 14, plaintiff filed a notice of interlocutory appeal to the Ninth Circuit.  ECF No. 49.  On May 20, the Ninth Circuit stayed dissolution of this court's temporary restraining order to afford the Circuit time to review the matter.  ECF No. 55.  Days later, a medical facility outside the United States admitted Israel as a patient, SAC ¶ 42, and plaintiff withdrew her Ninth Circuit appeal, ECF No. 59.

            On June 8, plaintiff stipulated to the dismissal of Kaiser and Dr. Myette as defendants in this case.  ECF No. 60.  On July 1, plaintiff filed the operative second amended complaint.  *See* SAC.  Plaintiff's second amended complaint names only one defendant: Karen Smith, M.D., in her official capacity as Director of the California Department of Health.  *Id.*  As Director of the California Department of Health, Karen Smith, M.D., has a supervisorial, regulatory, and enforcement role over California hospitals, and her Department issues death certificates.  *Id.* ¶ 4.  The second amended complaint includes five claims, all stemming from California's definition of death under CUDDA: (1) Deprivation of Life and Liberty in violation of Due Process under the Fifth and Fourteenth Amendments (42 U.S.C. § 1983); (2) Deprivation of Parental Rights in violation of Due Process under the Fifth and Fourteenth Amendments (42 U.S.C. § 1983); (3) Deprivation of Life (Cal. Const. Art. I § 1); (4) violation of federal Privacy Rights (42 U.S.C. § 1983); and (5) violation of state Privacy Rights (Cal. Const. Art. I § 1).  *Id.*  Plaintiff also seeks a declaration that CUDDA is unconstitutional on its face and as applied to the facts in this case.  SAC Prayer ¶¶ 2–3.

            Following July 1, the following events have taken place and are referenced in the motion to dismiss; they also are relevant to whether plaintiff should be granted leave to amend.  On August 6, 2016, plaintiff transported Israel back to the United States, where he was admitted to Children's Hospital of Los Angeles ("Children's Hospital").  Ex. C, Def.'s RJN at 29, ECF No.

4

1  68-3.  On August 16, Children's Hospital informed plaintiff it intended to remove Israel from life
2  support.  *Id.* at 30.  Two days later, the Los Angeles County Superior Court granted plaintiff's
3  request for a temporary restraining order that required Children's Hospital to maintain life
4  support.  Ex. D, Def.'s RJN at 43–44.

5  On August 25, the Los Angeles County Superior Court dissolved the temporary
6  restraining order.  Ex. E, Def.'s RJN at 46.  Children's Hospital subsequently removed Israel
7  from life support.  Plaintiff's position is that it was on this date that Israel died.  *See* Oct. 7, 2016
8  Hr'g Mins.

9  On August 31, defendant filed a motion to dismiss plaintiff's second amended
10  complaint based on Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), arguing plaintiff's as
11  applied claims are barred by the *Rooker-Feldman* doctrine, as they amount to a collateral attack
12  on the Los Angeles state court's judgment upholding the physicians' determination of death, and
13  that plaintiff generally lacks standing.  *See* Def.'s Mot. to Dismiss ("MTD") 13–15, ECF No. 68.
14  Plaintiff opposes, Pl.'s Opp'n, ECF No. 70, and defendant replied, Def.'s Reply, ECF No. 73.

15  III.     LEGAL STANDARDS
16      A.     Rule 12(b)(1)

17  A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) challenges the
18  court's subject-matter jurisdiction.  *See, e.g.*, *Savage v. Glendale Union High Sch.*, 343 F.3d
19  1036, 1039–40 (9th Cir. 2003).  The Federal Rules of Civil Procedure mandate that "[i]f the court
20  determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."
21  Fed. R. Civ. P. 12(h)(3).

22  "The Article III case or controversy requirement limits federal courts' subject
23  matter jurisdiction by requiring, inter alia, that plaintiffs have standing."  *Chandler v. State Farm*
24  *Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1121–22 (9th Cir. 2010) (citing *Allen v. Wright*, 468 U.S.
25  737, 750 (1984)).  As "an essential and unchanging part of the case-or-controversy requirement of
26  Article III," *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992), "[s]tanding is the threshold
27  issue of any federal action," *Employers-Teamsters Local Nos. 175 & 505 Pension Trust Fund v.*
28  *Anchor Capital Advisors*, 498 F.3d 920, 923 (9th Cir. 2007).  "The party asserting federal subject

1  matter jurisdiction bears the burden of proving its existence." *Chandler*, 598 F.3d at 1122 (citing
2  *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994)).  However, "[a]s the Supreme
3  Court has noted, the evidence necessary to support standing may increase as the litigation
4  progresses."  *Barnum Timber Co. v. U.S. E.P.A.*, 633 F.3d 894, 899 (9th Cir. 2011) (citing *Lujan*,
5  504 U.S. at 561).  "Where standing is raised in connection with a motion to dismiss, the court is
6  to 'accept as true all material allegations of the complaint, and construe the complaint in favor of
7  the complaining party.'"  *Levine v. Vilsack*, 587 F.3d 986, 991 (9th Cir. 2009) (quoting *Thomas v.*
8  *Mundell*, 572 F.3d 756, 760 (9th Cir. 2009)).

9        B.     <u>Rule 12(b)(6)</u>

10          Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a
11  complaint for "failure to state a claim upon which relief can be granted."  The motion may be
12  granted only if the complaint "lacks a cognizable legal theory or sufficient facts to support a
13  cognizable legal theory."  *Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1122 (9th
14  Cir. 2013).  Although a complaint need contain only "a short and plain statement of the claim
15  showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), in order to survive a motion
16  to dismiss this short and plain statement "must contain sufficient factual matter . . . to 'state a
17  claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting
18  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A complaint must include something
19  more than "an unadorned, the-defendant-unlawfully-harmed-me accusation" or "'labels and
20  conclusions' or 'a formulaic recitation of the elements of a cause of action.'"  *Id.* (quoting
21  *Twombly*, 550 U.S. at 555).  Determining whether a complaint will survive a motion to dismiss
22  for failure to state a claim is a "context-specific task that requires the reviewing court to draw on
23  its judicial experience and common sense."  *Id.* at 679.  Ultimately, the inquiry focuses on the
24  interplay between the factual allegations of the complaint and the dispositive issues of law in the
25  action.  *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

26          In making this context-specific evaluation, this court must construe the complaint
27  in the light most favorable to the plaintiff and accept its factual allegations as true.  *Erickson v.*
28  *Pardus*, 551 U.S. 89, 93–94 (2007).  However, "'conclusory allegations of law and unwarranted

inferences' cannot defeat an otherwise proper motion to dismiss." *Schmier v. U.S. Court of Appeals for Ninth Circuit*, 279 F.3d 817, 820 (9th Cir. 2002) (quoting *Associated Gen. Contractors of Am. v. Metro. Water Dist. of S. California*, 159 F.3d 1178, 1181 (9th Cir. 1998)).

IV.     DISCUSSION

Plaintiff's claims in this case stem from her assertion that she was harmed when doctors determined her son had died, following the definition and procedures set forth in CUDDA. *See* SAC ¶ 49. CUDDA defines death as follows:

> An individual who has sustained either (1) irreversible cessation of circulatory and respiratory functions, or (2) irreversible cessation of all functions of the entire brain, including the brain stem, is dead. A determination of death must be made in accordance with accepted medical standards.

Cal. Health & Safety Code § 7180(a). CUDDA also requires an "independent confirmation by another physician" after an individual is pronounced dead. *Id.* § 7181.

Defendant contends this court lacks jurisdiction under the *Rooker-Feldman* doctrine over plaintiff's as applied challenges to CUDDA, and plaintiff generally lacks standing. The court analyzes these two arguments in turn.

A.      *Rooker-Feldman* Doctrine

Defendant argues plaintiff's as applied claims are precluded by the *Rooker-Feldman* doctrine, which "bars any suit that seeks to disrupt or 'undo' a prior state-court judgment." *Bianchi v. Rylaarsdam*, 334 F.3d 895, 901 (9th Cir. 2003) (citation omitted). Specifically, defendant contends plaintiff's first two claims are an improper appeal from the state court's April 2016 decision to uphold the physicians' determination that Israel was dead. Def.'s MTD at 19.

*Rooker-Feldman* is a narrow doctrine that "applies only in 'limited circumstances' where a party in effect seeks to take an appeal of an unfavorable state-court decision to a lower federal court." *Lance v. Dennis*, 546 U.S. 459, 466 (2006) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 291 (2005)). This is because "Congress . . . vests the United States Supreme Court, not the lower federal courts, with appellate jurisdiction over state court

1  judgments." *Cooper v. Ramos*, 704 F.3d 772, 777 (9th Cir. 2012).  "The doctrine bars a district
2  court from exercising jurisdiction not only over an action explicitly styled as a direct appeal, but
3  also over the 'de facto equivalent' of such an appeal." *Cooper*, 704 F.3d at 777 (citing *Noel v.*
4  *Hall*, 341 F.3d 1148, 1155 (9th Cir. 2003)).  To determine whether the federal action functions as
5  a de facto appeal, courts "must pay close attention to the *relief* sought by the federal-court
6  plaintiff."  *Bianchi*, 334 F.3d at 900 (emphasis in original) (quotation and citation omitted).

7            The court previously addressed this issue, after the Placer County Superior Court's
8  ruling, and found the first amended complaint was not an attempt to appeal the state court's
9  decision.  *See* ECF No. 48.  Here too, plaintiff's current action before this court, filed before the
10  Los Angeles court ruled, is not an appeal of a state court ruling.  Unlike in her first state action,
11  plaintiff in this case challenges CUDDA's constitutionality generally.  *See D.C. Court of Appeals*
12  *v. Feldman*, 460 U.S. 462, 486 (1983) (allowing plaintiffs to proceed in federal court on claims
13  questioning the constitutionality of a rule, so long as plaintiffs did not seek review of the rule's
14  application in plaintiffs' particular case, which had been decided in state court).  In this case,
15  neither plaintiff's constitutional claims nor her non-constitutional claims were presented to the
16  Placer County Superior Court.  *See* Exs. A–G and J–K, ECF No. 14 (briefs, orders, and
17  transcripts from plaintiff's April 2016 proceedings in state court).  Additionally, the defendants in
18  the federal and state actions are wholly different: the sole remaining defendant in this action is
19  Karen Smith, M.D., in her capacity as Director of the California Department of Public Health,
20  whereas the only defendants in the Placer County state action were U.C. Davis Children's
21  Hospital and Kaiser Permanente Roseville Medical Center.  *See* Ex. A, Pl.'s April 14, 2016
22  Petition, ECF No. 14.  *See also Lance*, 546 U.S. at 466 (cautioning against using principles of
23  privity in the *Rooker-Feldman* analysis); *Marks v. Tennessee*, 554 F.3d 619, 623 (6th Cir. 2009)
24  (noting, in part, that *Rooker-Feldman* did not apply because the federal and state actions involved
25  different defendants).  The *Rooker-Feldman* doctrine is inapplicable to this case.

26      B.    <u>Standing</u>

27            Defendant also argues plaintiff lacks standing because CUDDA did not cause
28  plaintiff's alleged injury; rather only the third party doctors can properly be identified as the

cause. Def.'s MTD at 8. Thus, defendant argues plaintiff lacks standing because the doctors' determination was made in accordance with prevailing medical standards, and the relief sought by plaintiff would not redress her alleged injury. *Id.*

To establish standing in this case, plaintiff must satisfy a three part test:

> First, [plaintiff] must suffer an "injury in fact"—a "concrete and particularized" and "actual or imminent" harm to a legally protectable interest. Second, plaintiff[ ] must demonstrate a "causal connection between the injury and the conduct complained of" such that the injury is "fairly traceable" to the defendant's actions. Third, it must be "likely" that [plaintiff's] injury will be redressed by a favorable court decision.

*Harris v. Bd. of Supervisors, Los Angeles Cty.*, 366 F.3d 754, 760 (9th Cir. 2004) (quoting *Lujan*, 504 U.S. at 560–61).

### 1. Injury

"The party who seeks to invoke federal jurisdiction has the burden of establishing that it has suffered an injury in fact, 'an invasion of a legally-protected interest' that is concrete and particularized, and actual or imminent, not conjectural or hypothetical." *Didrickson v. U.S. Dep't of Interior*, 982 F.2d 1332, 1340 (9th Cir. 1992) (quoting *Lujan*, 504 U.S. at 560). In this case, plaintiff alleges she was injured when doctors declared her son was dead under California law when in her view, and informed by her religious faith, he was not "biologically dead" since he was still breathing and his heart was still breathing, albeit while connected to life support. *See* SAC ¶ 56. Before doctors removed Israel from life support on August 25, 2016, the threat of injury from doctors removing Israel from life support was concrete, particularized, and imminent because, plaintiff contends, Israel was biologically alive. *See Harris*, 366 F.3d at 761 (observing that "threatened rather than actual injury can satisfy Article III standing requirements" (quotations omitted)). Thus, even without amending her complaint to reflect Israel's death after he was removed from life support, plaintiff has pled sufficient facts to establish the injury prong of the standing inquiry.

2.    Causation

As for causation, plaintiff alleges CUDDA caused her harm because the definition of death in CUDDA "is broader than the historical definition [of death]." SAC ¶ 54. Plaintiff also argues CUDDA is "more than merely definitional" because it "prescribes the protocol for confirmation of death." Pl.'s Opp'n at 6.

To have standing, plaintiff must show her "alleged injury [is] 'fairly traceable to the challenged action of the defendant,' rather than [the result of] 'the independent actions of some third party not before the court.'" *Ass'n of Pub. Agency Customers v. Bonneville Power Admin.*, 733 F.3d 939, 953 (9th Cir. 2013) (quoting *Lujan*, 504 U.S. at 560). To satisfy this requirement, plaintiff must show "that there are no independent actions of third parties that break the causal link between" the conditions set forth in CUDDA and plaintiff's harm. *See id.* "The line of causation between the defendant's action and the plaintiff's harm must be more than attenuated. However, a causal chain does not fail simply because it has several links, provided those links are not hypothetical or tenuous and remain plausible." *Native Vill. of Kivalina v. ExxonMobil Corp.*, 696 F.3d 849, 867 (9th Cir. 2012) (citations, quotations, and brackets omitted). But "[i]n cases where a chain of causation involves numerous third parties whose independent decisions collectively have a significant effect on plaintiff's injuries, . . . the causal chain [is] too weak to support standing at the pleading stage." *Maya v. Centex Corp.*, 658 F.3d 1060, 1070 (9th Cir. 2011) (quotations and citations omitted).

Plaintiff contends CUDDA's definition of death caused her harm because "brain waves return in rare cases after having disappeared." SAC ¶ 49. However, CUDDA defines death as the "irreversible cessation of all functions of the entire brain." Cal. Health & Safety Code § 7180(a)(2). Thus, plaintiff's contention is inconsistent with the plain language of CUDDA, for if the cessation of all brain functions is irreversible, brain functions would by definition not return, not even in rare cases.

Plaintiff also contends she could amend her complaint to allege physicians in Guatemala, who cared for Israel when he was outside the United States, ran independent tests and found Israel was not brain dead. Pl.'s Opp'n at 11–14; *see* SAC ¶¶ 44–45. In other words,

plaintiff contends doctors at Kaiser originally misdiagnosed Israel as brain dead when in fact he was in a "persistent vegetative state." Pl.'s Opp'n at 12. As a result of this misdiagnosis, plaintiff argues, CUDDA harmed her as follows:

> [B]ecause Kaiser already acted under the CUDDA protocol, the medical providers at Children's Hospital would not accept the results of the two EEG tests [performed by doctors in Guatemala], would not perform their own brain death examination, and would not allow the parents to bring in an eminent professor from UCLA's medical school to conduct an examination.

*Id.*

CUDDA mandates that "[a] determination of death must be made in accordance with accepted medical standards." Cal. Health & Safety Code § 7180(a). Nothing in CUDDA prevented Children's Hospital from performing its own independent examinations or required the Hospital take account of the EEG tests. *See San Diego Cty. Gun Rights Comm. v. Reno*, 98 F.3d 1121, 1130 (9th Cir. 1996) (finding plaintiffs who claimed Crime Control Act restricted supply of assault weapons, thereby raising prices, could not establish causation because "nothing in the Act directs manufacturers or dealers to raise the price of regulated weapons"). Plaintiff's allegations are therefore not sufficient to show CUDDA is the cause of her injuries.

### 3. Redressability

Finally, in order to establish standing, plaintiff "must show a substantial likelihood that the relief sought would redress the injury." *Mayfield v. United States*, 599 F.3d 964, 971 (9th Cir. 2010) (citation omitted). At the motion to dismiss stage, "a court's obligation to take a plaintiff at its word . . . in connection with Article III standing issues is primarily directed at the injury in fact and causation issues, not redressability." *Levine*, 587 F.3d at 996–97 (citing *Lujan*, 504 U.S. at 561). To satisfy the redressability prong of the standing analysis, plaintiff in this case must plead facts demonstrating that invalidating CUDDA will reverse or otherwise impact the medical opinion that Israel died on April 14, when doctors at Kaiser determined Israel was dead. *See Levine*, 587 F.3d at 997 ("Even accepting the allegations in the [complaint] as true, [plaintiff] did not plead any facts demonstrating that [defendant] would act" differently but for the challenged administrative rule.). Plaintiff has not so pled.

11

Courts consistently find that "any pleading directed at the likely actions of third parties would almost necessarily be conclusory and speculative" absent supporting factual allegations. *Levine*, 587 F.3d at 997. For instance, in *Simon v. E. Kentucky Welfare Rights Org.*, indigent plaintiffs sued Department of Treasury officials to challenge provisions allowing favorable tax treatment to a non-profit hospital where plaintiffs were denied service. 426 U.S. 26, 43 (1976). Due to the attenuated chain of causation, the Supreme Court concluded that plaintiffs lacked standing, as there was no evidence that eliminating the challenged tax break would result in the hospital's changing its practices in treating the plaintiffs. *Id.* Similarly, in this case plaintiff has pled no facts suggesting the elimination of CUDDA would have resulted in physicians determining Israel was still alive on and after April 14, 2016.

Likewise, in *Glanton ex rel. ALCOA Prescription Drug Plan v. AdvancePCS Inc.*, plaintiffs were prescription drug plan participants who brought suit against a benefits management company under ERISA, alleging breach of fiduciary duty. 465 F.3d 1123, 1124 (9th Cir. 2006). Plaintiffs argued that if the court found in their favor, the plan's drug costs, contributions, and co-payments would decrease. *Id.* at 1125. The Ninth Circuit found that the alleged injury was not redressable because the court's judgment would not compel the defendants to increase their disbursement of benefits payments. *Id.* The court then held plaintiffs lacked standing under Article III because, as with the doctors in the case presently before this court, "any prospective benefits depend on an independent actor who retains broad and legitimate discretion the courts cannot presume either to control or predict." *Id.* (internal citations omitted).

Unlike in *Simon* and *Glanton ex rel.*, in *Stormans, Inc. v. Selecky*, pharmacy owners brought a Free Exercise Clause challenge against a regulation requiring pharmacists to stock and dispense a type of emergency contraception called Plan B. 586 F.3d 1109, 1120 (9th Cir. 2009). In holding that the pharmacy owners had Article III standing, the Ninth Circuit found that their injury would be redressed by a judgment that the regulation was unconstitutional. *Id.* at 1121–1122. Unlike in the case presently before this court, the connection in *Stormans* was direct because the regulation required the pharmacists to perform actions that they would not have to perform if the regulation were invalidated. *Id.*

12

The court finds plaintiff has failed to plead facts sufficient to show her desired relief would redress her injury.

V.      CONCLUSION

The court finds plaintiff's second amended complaint does not satisfy the causation and redressability prongs of the Article III standing inquiry. Having found plaintiff lacks standing, the court declines to address defendant's other arguments for dismissal at this time. The court therefore GRANTS defendant's motion to dismiss.

Federal Rule of Civil Procedure 15(a)(2) provides that "[t]he court should freely give [a party leave to amend its pleading] when justice so requires," and the Ninth Circuit has "stressed Rule 15's policy of favoring amendments." *Ascon Properties, Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989). In light of plaintiff's arguments in her briefing and the events that have transpired since the filing of the second amended complaint, suggesting amendment may be possible, plaintiff is granted leave to amend her complaint within twenty-one (21) days of the date of this order.

IT IS SO ORDERED.

DATED: March 27, 2017.

_____
UNITED STATES DISTRICT JUDGE