UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JONEE FONSECA, an individual parent and guardian of ISRAEL STINSON, a minor; LIFE LEGAL DEFENSE FOUNDATION,<br><br>Plaintiffs,<br><br>v.<br><br>KAREN SMITH, M.D., in her official capacity as Director of the California Department of Public Health; and DOES 2 through 10, inclusive,<br><br>Defendants. | No. 2:16-cv-00889-KJM-EFB<br><br>ORDER |

This case arose after a toddler suffered a severe asthma attack. Following efforts to treat him, doctors declared the toddler brain dead. When the toddler's mother's legal efforts to maintain her son on a heart and lung machine proved unsuccessful, the child was removed from the machine and his heart and lungs ceased to function. The toddler's mother, Jonee Fonseca, sues to challenge the constitutionality of the state law that defines death to include brain death, as she believes life continues as long as the heart beats and the lungs draw breath. At an earlier stage, when the toddler Israel was still supported by a heart and lung machine, the court dismissed the complaint because Fonseca's pleadings did not allege the state law caused harm or that the court could redress any alleged injury, two necessary elements to invoke this court's jurisdiction.

1

The court permitted leave to amend the complaint. Upon careful consideration of the third amended complaint, and having heard from the parties, the court GRANTS defendant's motion to dismiss. ECF No. 83. Because further amendment would be futile, dismissal this time is without leave to amend.

I.     FACTUAL AND PROCEDURAL BACKGROUND

On April 1, 2016, Israel Stinson suffered a severe asthma attack and was taken to Mercy General Hospital in Sacramento ("Mercy"), where he was intubated. Third Am. Compl. ("TAC") ¶ 7, ECF No. 80. Israel eventually was transferred to University of California Davis Medical Center, also in Sacramento ("UC Davis"), and admitted to the pediatric intensive care unit. *Id.* On April 10, after performing a series of tests, including a magnetic resonance imaging ("MRI") and computed tomography ("CT") scan, doctors at UC Davis concluded Israel had suffered brain death. *Id.* ¶ 20.

The next day, on April 11, Israel was transferred to Kaiser Permanente Roseville Medical Center – Women and Children's Center ("Kaiser"). *Id.* ¶ 21. On April 14, doctors there performed further tests and confirmed Israel had suffered brain death. *See id.* ¶¶ 21–24. That day, Kaiser doctor Michael Myette filled out and signed a Certificate of Death that declared Israel deceased, *id.* ¶¶ 25, 27, and Kaiser sought to remove him from life support, *id.* ¶¶ 30, 43.

On April 14, plaintiff filed a case in Placer County Superior Court seeking to enjoin Kaiser from withdrawing life support. *Id.* ¶ 43; Placer County Petition, ECF No. 14-2 (case entitled *Stinson v. UC Davis Children's Hosp.*, Case No. S-CV-0037673).[1] The Superior Court granted a temporary restraining order requiring Kaiser to maintain life support. *Id.* ¶¶ 43–44. After the Superior Court found on April 27 that Kaiser had satisfied all medical protocols in determining Israel's death, the court dissolved the restraining order and dismissed the case. *Id.* ¶ 45; Placer County Order, ECF No. 19-1 (order dated April 29, 2016).

---

[1] The court previously has taken judicial notice of the state court filings and orders relevant to this case. *See* ECF No. 48 at 4 n.2; ECF No. 79 at 2. It does so again here, without objection as confirmed at hearing. *See* Placer County Petition, ECF No. 14-2; Placer County Order, ECF No. 19-1; Los Angeles County Petition, ECF No. 68-3 at 27–35; Los Angeles County Petition, ECF No. 68-3 at 27–35.

2

On April 28, Fonseca filed this action in federal court. Compl., ECF No. 1. The complaint named Kaiser and Dr. Myette as defendants and alleged, *inter alia*, violation of plaintiff's right to privacy as guaranteed by the Fourteenth Amendment. *Id.* On May 2, the court heard arguments and granted plaintiff's request for a temporary restraining order requiring Kaiser to maintain life support. ECF No. 22. On May 3, plaintiff filed an amended complaint, adding as a defendant Karen Smith, M.D., in her official capacity as Director of the California Department of Public Health. First Am. Compl. ("FAC"), ECF No. 29. The amended complaint alleged that defendants violated plaintiff's right to due process as guaranteed by the Fifth and Fourteenth Amendments; it sought a declaration that the California Uniform Determination of Death Act ("CUDDA"), a statute that defines death in California, is unconstitutional on its face. *Id.*; FAC Prayer ¶ 3. On May 13, after further argument, the court denied plaintiff's request for a preliminary injunction, but stayed its order until May 20 to afford plaintiff time to appeal to the Ninth Circuit Court of Appeals. ECF Nos. 45, 48.

On May 20, the Ninth Circuit further stayed dissolution of the temporary restraining order to allow more time for review. ECF No. 55. On May 21, Israel was flown to Sanatorio Nuestra Señor del Pilar, a medical facility in Guatemala City, Guatemala, TAC ¶ 45, and plaintiff's interlocutory appeal was voluntarily dismissed. ECF No. 59. While Israel was abroad, plaintiff's case here continued; plaintiff dismissed Kaiser and Dr. Myette as defendants on June 8, ECF No. 60, and filed a Second Amended Complaint on July 1, 2016, Second Am. Compl. ("SAC"), ECF No. 64. Back at the Guatemala City facility, after performing additional examinations, including an electroencephalogram ("EEG"), doctors found Israel was not dead but instead in a "persistent vegetative state."[2] TAC ¶ 47. Israel stayed at the Guatemala City facility until August 6, when he was transported back to the United States by air ambulance and admitted to Children's Hospital of Los Angeles ("Children's Hospital"). TAC ¶ 52.

---

[2] A patient in a "persistent vegetative state" may have some lower- and mid-brain-stem activity, and is not considered dead under California law. *In re Christopher I.*, 106 Cal. App. 4th 533, 543 (2003) (citing Cal. Health & Safety Code § 7180(a)).

After transferring to Los Angeles, Israel's face and torso became increasingly red and swollen. *Id*. ¶ 53. Doctors at Children's Hospital stopped feeding Israel and sought to remove Israel's ventilator. *Id.* ¶¶ 53–54. On August 18, plaintiff filed a new case in Los Angeles County Superior Court to enjoin Children's Hospital from removing Israel from life support. *Id*. ¶ 55; Los Angeles County Petition, ECF No. 68-3 at 27–35. The Superior Court initially granted a temporary restraining order, TAC ¶ 55, which it dissolved on August 25, *id*. ¶ 60; Los Angeles County Order, ECF No. 68-3 at 46. That same day, on August 25, 2016, doctors at Children's Hospital removed Israel from life support. TAC ¶ 61. Plaintiffs' position is that it was on this date that Israel died. *Id.* ¶ 62.

On March 28, 2017, the court granted defendants' motion to dismiss the Second Amended Complaint on the grounds that plaintiff had not established Article III standing. Prior Order, ECF No. 79; SAC. Given the events occurring after the filing of the second amended complaint, including Israel's return to the United States and Children's Hospital's withdrawal of life support, the court granted leave to amend. *Id.* at 13.

The third amended complaint names as defendant only Karen Smith, sued in her official capacity as Director of the California Department of Public Health. TAC ¶ 5. The complaint names a new plaintiff, Life Legal Defense Foundation ("LLDF"), a not-for-profit organization whose mission "focuses on preservation of the lives of the most vulnerable members of society, including the very young and those facing the end of life." *Id.* ¶ 4. Plaintiffs assert the following claims: (1) Deprivation of Life and Liberty in Violation of Due Process of Law under the Fifth and Fourteenth Amendments; (2) Deprivation of Parental Rights in Violation of Due Process of Law under the Fifth and Fourteenth Amendments; (3) Deprivation of Life under California Constitution Article I, section 1; (4) Violation of Privacy Rights protected by the United States Constitution; and (5) Violation of Privacy Rights protected by California Constitution Article I, section 1. *Id.* ¶¶ 71–94. Plaintiff's prayer for relief includes the following: (1) an order expunging all records that state or imply Israel died on April 14, 2016 and not August 25, 2016 and requiring amendment to reflect the later date; (2) a declaration that CUDDA is

4

unconstitutional on its face; (3) a declaration that CUDDA is unconstitutional as applied; (4) any and all other appropriate relief; and (5) costs and attorney fees. *Id.* Prayer.

Defendant moves to dismiss under Federal Rules of Civil Procedure 12(b)(1) and (6). TAC; Mot., ECF No. 83. Plaintiffs oppose, and defendant filed a reply. Opp'n, ECF No. 84; Reply, ECF No. 85. On September 8, 2017, the court held a hearing on the motion, at which Kevin Snider, Matthew McReynolds and Alexandra Snyder appeared for plaintiffs and Ashante Norton appeared for defendant. ECF No. 87.

II. LEGAL STANDARDS

A. Rule 12(b)(1)

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) challenges the court's subject-matter jurisdiction. *See, e.g.*, *Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039–40 (9th Cir. 2003). The Federal Rules of Civil Procedure mandate that "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). "The Article III case or controversy requirement limits federal courts' subject matter jurisdiction by requiring, *inter alia*, that plaintiffs have standing." *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1121–22 (9th Cir. 2010) (citing *Allen v. Wright*, 468 U.S. 737, 750 (1984)). As "an essential and unchanging part of the case-or-controversy requirement of Article III," *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992), "[s]tanding is the threshold issue of any federal action," *Employers-Teamsters Local Nos. 175 & 505 Pension Trust Fund v. Anchor Capital Advisors*, 498 F.3d 920, 923 (9th Cir. 2007). "The party asserting federal subject matter jurisdiction bears the burden of proving its existence." *Chandler*, 598 F.3d at 1122 (citing *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994)). However, "[a]s the Supreme Court has noted, the evidence necessary to support standing may increase as the litigation progresses." *Barnum Timber Co. v. U.S. E.P.A.*, 633 F.3d 894, 899 (9th Cir. 2011) (citing *Lujan*, 504 U.S. at 561). "Where standing is raised in connection with a motion to dismiss, the court is to 'accept as true all material allegations of the complaint, and construe the complaint in favor of the complaining party.'" *Levine v. Vilsack*, 587 F.3d 986, 991 (9th Cir. 2009) (quoting *Thomas v. Mundell*, 572 F.3d 756, 760 (9th Cir. 2009)).

B. Rule 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." The motion may be granted only if the complaint "lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1122 (9th Cir. 2013). Although a complaint need contain only "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), in order to survive a motion to dismiss this short and plain statement "must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint must include something more than "an unadorned, the-defendant-unlawfully-harmed-me accusation" or "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). Determining whether a complaint will survive a motion to dismiss for failure to state a claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Ultimately, the inquiry focuses on the interplay between the factual allegations of the complaint and the dispositive issues of law in the action. *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

In making this context-specific evaluation, this court must construe the complaint in the light most favorable to the plaintiff and accept its factual allegations as true. *Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007). However, "'conclusory allegations of law and unwarranted inferences' cannot defeat an otherwise proper motion to dismiss." *Schmier v. U.S. Court of Appeals for Ninth Circuit*, 279 F.3d 817, 820 (9th Cir. 2002) (quoting *Associated Gen. Contractors of Am. v. Metro. Water Dist. of S. California*, 159 F.3d 1178, 1181 (9th Cir. 1998)).

III. DISCUSSION

A. The Prior Order

In its prior order, the court dismissed Fonseca's challenge to California's Uniform Determination of Death Act for lack of standing. A brief summary of CUDDA and the court's prior order is necessary as background here.

California has adopted the Uniform Determination of Death Act as Health & Safety Code section 7180 and defines death as follows:

> An individual who has sustained either (1) irreversible cessation of circulatory and respiratory functions, or (2) irreversible cessation of all functions of the entire brain, including the brain stem, is dead. A determination of death must be made in accordance with accepted medical standards.

Cal. Health & Safety Code § 7180(a). The statute provides two independent bases for a determination of death. *People v. Flores*, 3 Cal. App. 4th 200, 210 (1992) ("Since death is present when only one of the prongs of the statute is satisfied, neither must be satisfied for life to be present."). As the statute makes clear on its face, any determination must be "made in accordance with accepted medical standards." *Dority v. Super. Ct.*, 145 Cal. App. 3rd 273, 278 (1983) (citing Cal. Health & Safety Code § 7180(a)). The Uniform Determination of Death Act language and similar brain death definitions have been uniformly accepted throughout the United States.[3] *In re Guardianship of Hailu*, 361 P.3d 524, 528 (Nev. 2015) (citing Leslie C. Griffin & Joan H. Krause, Practicing Bioethics Law 106 (2015) ("Thus all fifty states define brain death as legal death even if the heart continues to beat.")).

The court previously held Fonseca lacked standing to challenge CUDDA. Prior Order at 9–13. As the court explained then, to establish standing, a plaintiff must satisfy a three-part test:

> First, [plaintiff] must suffer an "injury in fact"—a "concrete and particularized" and "actual or imminent" harm to a legally protectable interest. Second, plaintiff[] must demonstrate a "causal connection between the injury and the conduct complained of" such that the injury is "fairly traceable" to the defendant's actions. Third, it must be "likely" that [plaintiff's] injury will be redressed by a favorable court decision.

---

[3] Though New Jersey has codified this definition, N.J. Stat. §§ 26:6A-2–3, it also has enacted a religious exemption prohibiting a declaration of death on the basis of brain death when to do so would violate the patient's religious beliefs, *id.* § 26:6A-5. "In these cases, death shall be declared, and the time of death fixed, solely upon the basis of cardio-respiratory criteria[.]" *Id.*

7

*Id.* at 9 (quoting *Harris v. Bd. of Supervisors, L.A. Cty.*, 366 F.3d 754, 760 (9th Cir. 2004) (quoting *Lujan*, 504 U.S. at 560–61). Looking at the Second Amended Complaint, the court found Fonseca established the first but not the last two requirements. *Id.* at 9–13.

The court first found Fonseca satisfied the injury requirement because the threat of removal of life support while Israel was still alive was sufficient to establish the "invasion of a legally-protected interest that is concrete and particularized, and actual or imminent, not conjectural or hypothetical." *Id.* at 9 (quoting *Didrickson v. U.S. Dep't of Interior*, 982 F.2d 1332, 1340 (9th Cir. 1992) (quoting *Lujan*, 504 U.S. at 560)). "Thus, even without amending her complaint to reflect Israel's death after he was removed from life support, plaintiff has pled sufficient facts to establish the injury prong of the standing inquiry." *Id.*

Next, the court found causation lacking because CUDDA did not plausibly lead to an incorrect declaration of Israel's death. *Id.* at 10–11. To the extent Fonseca alleged doctors incorrectly determined Israel's condition was irreversible, the court found the statute could not cause that harm: CUDDA defines death as the "irreversible cessation of all functions of the entire brain," Cal. Health & Safety Code § 7180(a)(2), so plaintiff's contention was inconsistent with CUDDA's plain language requiring permanence and inability to reverse. *Id.* at 10. To the extent Fonseca alleged doctors relied on CUDDA to refuse to revisit an incorrect determination, that position also was undermined by the statute: CUDDA mandates that "[a] determination of death must be made in accordance with accepted medical standards," Cal. Health & Safety Code § 7180(a), and nothing in CUDDA prevented doctors from performing independent examinations in light of indications Fonseca say pointed to Israel's improving condition. Prior Order at 11.

Finally, the court found Fonseca did not establish redressability, or "a substantial likelihood that the relief sought would redress the injury." *Id.* at 11. As the court reasoned then, Fonseca's claims turned on the likely actions of third-party doctors who, even without CUDDA, might have made the same decision. *Id.* at 12. Indeed, doctors in a case such as this "retain[] broad and legitimate discretion the courts cannot presume either to control or predict." *Id.* (quoting *Glanton ex rel. ALCOA Prescription Drug Plan v. AdvancePCS Inc.*, 465 F.3d 1123, 1125 (9th Cir. 2006)). Thus, invalidating CUDDA was not substantially likely to reverse or

8

otherwise impact the medical opinion that Israel died on April 14, when doctors at Kaiser determined Israel was brain dead. *Id.* at 11–13.

B. The Third Amended Complaint

The Third Amended Complaint largely mirrors the Second Amended Complaint. *Compare* TAC *with* SAC. Many of the changes in the allegations reflect the events occurring after the Second Amended Complaint was filed but before the court held a hearing on the motion to dismiss it. *See, e.g.*, TAC ¶¶ 45–61. Most significantly, the complaint now alleges that doctors withdrew Israel from life support[5] on August 25, 2016, the day Fonseca says her son actually died. *Id*. ¶¶ 61–62. The question here is whether that change, or any other in the Third Amended Complaint, provides Fonseca with standing to pursue her claims in this forum. As explained below, the court concludes they do not.

As in the Second Amended Complaint, Fonseca alleges she was harmed when doctors, following the definition and procedures set forth in CUDDA, determined her son had died. TAC ¶¶ 38–40. That determination, she alleges, led to the withdrawal of Israel's life support. *Id.* ¶¶ 54, 59. Fonseca's amended complaint thus establishes an "injury in fact." *Cf.* Prior Order at 9. Even before the withdrawal of life support, the threat of removal while Israel was allegedly "biologically alive" was sufficiently concrete, particularized, and imminent. *Id.*

---

[5] Although the parties did not raise the issue, the withdrawal of life support might moot this case. *See Protectmarriage.com-Yes on 8 v. Bowen*, 752 F.3d 827, 834 (9th Cir. 2014) (citations omitted) (case moot where "federal court can no longer effectively remedy a 'present controversy' between the parties"). This case might trigger the "capable of repetition, yet evading review" exception to mootness, because life support was maintained only by removing Israel from this country. *See also McMath v. California*, 15-CV-06042-HSG, 2016 WL 7188019, at *1 (N.D. Cal. Dec. 12, 2016) (brain dead patient sustained on life support by moving her to state with religious exception for determination of death). On the other hand, because life support can be continued after the determination of death, this case may not be of "inherently limited duration" to trigger that exception. *Bowen*, 752 F.3d at 836 (quoting *Doe No. 1 v. Reed*, 697 F.3d 1235, 1240 (9th Cir. 2012)). Alternatively, the addition of an organizational plaintiff here may create an ongoing controversy. *See Abigail All. for Better Access to Developmental Drugs v. Eschenbach*, 469 F.3d 129, 132–33 (D.C. Cir. 2006) (organization that assisted terminally ill patients had standing to challenge FDA policies without regard to whether organization's members continued to live). The court need not resolve this question, as both plaintiffs here lack standing in the first instance.

(citing *Harris*, 366 F.3d at 761). The new allegations of the actual withdrawal of life support only bolster the court's finding of a cognizable injury. But as with the previous complaint, the Third Amended Complaint does not establish the remaining requirements of causation and redressability.

To establish causation, Fonseca must draw a fairly traceable causal chain between her injury and defendant's conduct, unbroken by the independent actions of some third party. *Ass'n of Pub. Agency Customers v. Bonneville Power Admin.* (*Bonnerville Power*), 733 F.3d 939, 953 (9th Cir. 2013). "[A] causal chain does not fail simply because it has several links, provided those links are not hypothetical or tenuous and remain plausible." *Native Vill. of Kivalina v. ExxonMobil Corp.*, 696 F.3d 849, 867 (9th Cir. 2012) (citations, quotations, and brackets omitted).

Here, Fonseca's causal story is that CUDDA causes doctors to declare a brain dead patient to be dead, which in turn causes doctors to withdraw life support. Both links in the chain are speculative. First, CUDDA does not require a declaration of death, although it includes brain death as one of two independent grounds for making such a determination. Cal. Health & Safety Code § 7180(a)(1)–(2). Fonseca conceded this point at hearing, but argued CUDDA "empowers" doctors to declare a brain dead patient to be deceased and provides a social and cultural context in which such a determination is acceptable. Even if true, under CUDDA, that determination "must be made in accordance with accepted medical standards." Cal. Health & Safety Code § 7180(a). This requirement leaves the ultimate decision to the discretion of third-party doctors implementing standards that the statute itself does not identify or define. To the extent Fonseca argues that medical standards vary and that "the determination of brain death can differ from patient to patient depending on the protocol chosen," TAC ¶ 67, this argument bolsters the court's conclusion in effectively if not expressly conceding CUDDA does not prescribe a protocol. *See In re Guardianship of Hailu*, 361 P.3d at 530 (suggesting two protocols, the so-called "Harvard criteria" and the newer American Association of Neurology guidelines, could both be the "accepted medical standard" under Nevada's substantially similar Uniform Determination of Death).

Second, Fonseca has not shown that a doctor's declaration of death, independently confirmed, necessarily leads to the withdrawal of life support. A doctor may no longer face criminal or civil liability for withdrawing life support after a determination of death has been made, but "[t]his does not mean the hospital or the doctors are given the green light to disconnect a life-support device . . . ." *Dority*, 145 Cal. App. at 280. A parent has a right to consultation and participation in the decision to withdraw life support. *Id.* In other words, the decision to withdraw life support is ordinarily the product not only of third-party doctors implementing independent standards while also consulting with the patient's family; to the extent that Fonseca alleges doctors did not properly consult her before withdrawing life support, her claim is against those doctors who allegedly failed to follow state law and not with the law itself. Thus, both steps in Fonseca's causal story turn on "independent actions of third parties that break the causal link between" CUDDA and Fonseca's injury. *Bonneville Power*, 733 F.3d at 953 (quoting *Lujan*, 504 U.S. at 560). Fonseca has not established causation.

To establish redressability, Fonseca must show "a substantial likelihood that the relief sought would redress the injury." *Mayfield v. United States*, 599 F.3d 964, 971 (9th Cir. 2010) (citation omitted).

The Third Amended Complaint seeks two forms of relief: a declaration that CUDDA is unconstitutional either on its face or as applied and an order amending Israel's medical records to indicate August 25, 2016, the day his heart stopped beating, as the date of death. TAC Prayer ¶¶ 1–3. The first remedy would not redress Fonseca's injury. Invalidating CUDDA would not reverse or otherwise impact the medical opinion that Israel died on April 14, 2016. *Cf.* Prior Order at 11. Due to an attenuated chain of causation, Fonseca has not shown a "substantial likelihood" that declaring CUDDA unconstitutional would redress her injury. *Id.* at 11–13 (citing *Simon v. E. Kentucky Welfare Rights Org.*, 426 U.S. 26, 43 (1976); *Glanton ex rel. ALCOA Prescription Drug Plan v. AdvancePCS Inc.*, 465 F.3d 1123, 1124 (9th Cir. 2006)). Fonseca has not provided any basis for the court to revisit its prior conclusion.

The court is without power to provide the second remedy, amending the declaration of death. Also as explained in the court's prior orders, although the *Rooker-Feldman*

doctrine could permit this court's entertaining a general challenge to CUDDA's constitutionality, the doctrine prohibits this court from disrupting or undoing a prior state-court judgment. Prior Order at 7–8; *see also* ECF No. 48 at 6–7 (citing *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983)). Here, two state courts have reviewed the determination of death. *See* Place County Order; Los Angeles County Order. This court may not act as a *de facto* appellate court to review those judgments. *Cf. Feldman*, 460 U.S. at 466–68, 87 (graduates of unaccredited law school could not seek relief in federal court of state court's application of rule prohibiting them from sitting for state's bar exam, but could challenge only the rule itself).

The court is thus unable to redress Fonseca's alleged injury of loss of medical insurance coverage and government benefits flowing from an incorrect date of death. *See* TAC ¶ 63; Opp'n at 14. The court also cannot review whether doctors' determination of death here was "made in accordance with accepted medical standards." Cal. Health & Safety Code § 7180(a). To the extent Fonseca alleges doctors applied a protocol that was not an "accepted medical standard" and that doctors would have found signs of life had they conducted an EEG under the "Harvard criteria," that argument appears to belong in a state appellate court, if it can be made in this case at this point. *See In re Guardianship of Hailu*, 361 P.3d at 532 (Nevada Supreme Court's reversal of trial court's denial of injunction and remand for further consideration regarding which protocols were consistent with accepted medical standards). Alternatively, Fonseca's recourse lies with the state legislature or the Uniform Law Commission. Although California has not adopted the religious exemption Fonseca seeks, she may advocate for a change in state law, with New Jersey's enactment of a similar exemption as a model. *See* N.J. Stat. § 26:6A-5. But none of this addresses the fundamental defect in Fonseca's case here, as this court cannot redress her injury.

Fonseca has not established causation or redressability to support her standing. The court next evaluates whether the outcome is any different for LLDF, the newly named plaintiff in the Third Amended Complaint.

12

C.     Organizational Standing

An organization can have standing on its own behalf, *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 378–79 (1982), or on behalf of its members, *Friends of the Earth, Inc. v. Laidlaw Envtl. Services (TOC), Inc.*, 528 U.S. 167, 181 (2000). LLDF proceeds on both bases. *See* TAC ¶ 4.

To sue on behalf of its members, an association must show "[1] its members would otherwise have standing to sue in their own right, [2] the interests at stake are germane to the organization's purpose, and [3] neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Friends of the Earth*, 528 U.S. at 181 (citing *Hunt v. Wash. State Apple Advertising Comm'n*, 432 U.S. 333, 343 (1977)). Here, LLDF's associational standing fails with the first element. While LLDF provides no detail about any member, the court assumes Fonseca is a member or client[7], as counsel argued at hearing. And Fonseca lacks standing for the reasons discussed above. Because plaintiffs have not shown LLDF's members or clients would otherwise have standing to sue in their own right, LLDF does not have standing to sue on behalf of its members here.

To sue on behalf of itself, an organization must show the same "irreducible constitutional minimum of standing" that applies to an individual, which requires (1) injury in fact; (2) causation; and (3) redressability. *La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*, 624 F.3d 1083, 1088 (9th Cir. 2010) (citing *Havens Realty*, 455 U.S. at 378). An organization can establish injury by showing it suffered "both a diversion of its resources and a frustration of its mission." *Fair Hous. of Marin v. Combs*, 285 F.3d 899, 905 (9th Cir. 2002). An organization cannot manufacture injury by "incurring litigation costs or simply choosing to spend money fixing a problem that otherwise would not affect the organization at all." *La Asociacion de Trabajadores*, 624 F.3d at 1088 (citing *Fair Employment Council v. BMC Mktg. Corp.*, 28

---

[7] The court assumes without deciding that LLDF's "clients," as argued by counsel at hearing, are the constitutional equivalent of "members" for which an organization may assert associational standing.

13

F.3d 1268, 1276–77 (D.C. Cir. 1994)). "It must instead show that it would have suffered some other injury if it had not diverted resources to counteracting the problem." *Id.*

Here, plaintiffs sufficiently allege LLDF's injury. LLDF's mission "focuses on preservation of the lives of the most vulnerable members of society, including the very young and those facing the end of life." TAC ¶ 4. That mission is frustrated by "attempts by medical facilities to remove life-support for members of the public whose loved ones are declared brain dead, though they are not biologically dead." *Id.* LLDF also diverts significant time and resources to resist those attempts to withdraw life support, in counseling families, negotiating with hospitals, engaging in litigation and raising funds for these purposes. *Id.* LLDF has sufficiently alleged a frustration of its mission and a diversion of its resources to support injury.

Like Fonseca, however, LLDF's injury is not plausibly caused by CUDDA and will not be redressed by the remedies plaintiffs seek. Plaintiffs allege LLDF's mission is frustrated "[d]ue to the CUDDA protocol described herein." TAC ¶ 4. As discussed above, the complaint does not identify a precise protocol that CUDDA requires, but points instead to multiple types of protocols for brain death used in the medical community. *Id.* ¶ 67. As does Fonseca's causal story, then, LLDF's turns on the independent actions of third-party doctors, implementing medical standards that the statute does not define or require. LLDF has not established causation. Nor has it shown a "substantial likelihood" that declaratory relief will redress the frustration of LLDF's mission. LLDF fails to establish the causation and redressability prongs for constitutional standing.

IV. CONCLUSION

Plaintiffs have not shown they have standing to pursue their claims and the complaint must be dismissed. In the court's prior order concluding the same, the court granted leave to file a third amended complaint in light of arguments and subsequent events not reflected in the second amended complaint. Prior Order at 13. Plaintiffs now have not provided a basis to suggest granting leave to file a fourth amended complaint would not be futile. Accordingly, the court GRANTS the motion to dismiss without leave to amend.

The Clerk of the Court is directed to enter judgment and close this case.

This order resolves ECF No. 83.

IT IS SO ORDERED.

DATED: September 22, 2017.

                                                                                    UNITED STATES DISTRICT JUDGE